# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| BRANDON W.,[1] | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:20-cv-335 |
| | ) |
| ANDREW W. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Brandon W. ("Brandon") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him no longer disabled as of July 7, 2016, and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Brandon alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate his function-by-function capabilities, by giving little weight to the opinions of his treating physicians, by improperly evaluating his mental impairments, and by improperly assessing his subjective allegations. I conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Brandon's Motion for Summary Judgment (Dkt. No. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Brandon was no longer disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation

---

[2] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

2

omitted). In Monroe, the Court of Appeals found that the ALJ did not "satisfactorily explain his decision to partly discredit [the claimant's] testimony regarding the symptoms and functional limitations resulting from his impairments." Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion lacks the specific analysis that would allow for meaningful review.

**CLAIM HISTORY**

Brandon was previously determined to be disabled by the Social Security Administration ("SSA") beginning on April 1, 2011, due to an impairment that met Listing 8.05 (dermatitis). R. 103, 116. The SSA conducted a continuing disability review and determined that Brandon was no longer disabled as of July 7, 2016. R. 113. This determination was upheld on reconsideration. R. 114. In January 2018, Disability Hearing Officer Marilyn Wood conducted a video hearing and entered a decision finding that Brandon's impairment no longer met or equaled Listing 8.05, he has the residual functional capacity ("RFC") to perform light work and he is no longer disabled. R. 168–177. Brandon appealed Officer Wood's decision, and ALJ Michael Dennard held a hearing to consider Brandon's disability claim on February 19, 2019. R. 53. Counsel represented Brandon at the hearing, which included testimony from Brandon and vocational expert Mark Hallman. Id.

On April 22, 2019, the ALJ entered his decision, analyzing Brandon's claim under an eight-step evaluation process[3] and denying his claim for benefits. R. 15–32. The ALJ noted that

---

[3] The eight-step process to evaluate Brandon's continuing benefits claim requires the Commissioner to ask, in sequence, whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has an impairment that meets or equals the requirements of a listed impairment; (3) the claimant has medically improved; (4) the medical improvement is related to the ability to work; (5) there is an exception to medical improvement that applies; (6) the claimant has current impairments in combination that are severe; (7) the claimant's residual functional capacity based on the current impairments and if he can perform past relevant work; and (8) whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience. 20 C.F.R. § 404.1594.

3

the most recent favorable medical decision finding Brandon disabled (called the "Comparison Point Decision") was dated January 29, 2013. R. 17. At that time, Brandon suffered from the severe impairment of dermatitis, depression and anxiety, and equaled Listing 8.05 for skin conditions. Id.

The ALJ determined that as of July 7, 2016, Brandon suffered from the severe impairments of dermatitis, depression, anxiety, degenerative disc disease, obesity, and hypertension. R. 17. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17–21. Specifically, the ALJ evaluated Listing 8.05, which requires that the claimant have extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. The ALJ found little evidence from the Comparison Point Decision to the current decision to support a finding that Brandon met the Listing. R. 19. The ALJ determined that Brandon's medical improvement occurred on or about July 7, 2016. R. 21.

The ALJ concluded that Brandon retained the residual functional capacity ("RFC") to perform a range of light work. R. 22. Specifically, the ALJ found that Brandon can walk for 2 hours, operate foot controls with the right foot and left foot occasionally; operate hand controls with the right hand and left hand frequently; climb ramps and stairs occasionally; climb ladders, ropes or scaffolds occasionally; balance, stoop, kneel, crouch and crawl occasionally; work at unprotected heights occasionally; work around hazardous machinery, in humidity and wetness, in dust fumes and pulmonary irritants occasionally, work in extreme cold, extreme heat and in vibration occasionally. The ALJ further found that Brandon is limited to work with simple, work-related decisions, and can interact with supervisors, coworkers, and the public occasionally. R. 23.

The ALJ determined that Brandon has no past relevant work, and that he can perform jobs that exist in the national economy, such as addressing clerk, stuffer, and printed circuit board touch-up screener. R. 31. Thus, the ALJ determined that Brandon was no longer disabled as of July 7, 2016. Id. Brandon appealed the ALJ's decision and on April 27, 2020, the Appeals Council denied his request for review. This appeal followed. R. 1–4.

## ANALYSIS

Brandon alleges that the ALJ's RFC addresses only his skill level of work and does not address his ability to sustain work activity over the course of an 8-hour workday. Pl. Br. Summ. J. p. 31. I agree that the ALJ's RFC limitations of simple, routine tasks with simple work-related decisions does not sufficiently address Brandon's moderate limitation with persistence and pace and ability to sustain work for an 8-hour day. The ALJ focused his opinion on Brandon's improved psoriatic arthritis, and limited Brandon's physical RFC to a limited range of light work to account for his psoriatic arthritis and back pain. The ALJ also included mental limitations of simple, routine tasks with simple work-related decisions, and occasional interaction with others, to account for Brandon's depression and anxiety. However, several medical opinions indicate that Brandon has moderate impairments with concentration, persistence, or pace, and may have difficulty sustaining work for an 8-hour day, due to his physical symptoms and/or his mental impairments. The ALJ does not directly address Brandon's ability to sustain work or persist for an 8-hour workday in his decision. It may be unnecessary for the ALJ to directly address this point if the medical evidence demonstrates that Brandon can engage in simple, routine tasks, despite his limitations. Here, the ALJ's decision does not include the necessary supportive evidence for the court to determine that Brandon is capable of sustaining work for an 8-hour workday.

Brandon suffers from psoriatic arthritis, low back pain, depression, and anxiety. Brandon sought treatment for his depression and anxiety, and on February 13, 2018, Brandon saw Malak Iskandar, D.O., at Alleghany-Highlands Community Service for a psychiatric evaluation. R. 1074. Brandon reported years long history of depressive symptoms but denied suicidal or homicidal ideations. He reported a chronic history of agoraphobia, feeling anxious in crowded places, and feeling judged. Brandon was previously treated with Paxil and Zoloft. Id. Brandon's mental status examination revealed a depressed mood, and Dr. Iskandar diagnosed major depressive disorder and agoraphobia. Dr. Iskandar increased Brandon's Zoloft dosage. R. 1075. Brandon attended a counseling session at Alleghany-Highlands Community Service with Ashley Johnson on February 16, 2018. R. 1077. Brandon's mood was withdrawn and unmotivated. Ms. Johnson noted that Brandon has "no motivation to do anything and does not want to participate in group therapy." R. 1078. Brandon followed up with Dr. Iskandar in March 2018 and reported no change in his depression and anxiety. Brandon's mood was depressed, and his insight and judgment were "fair." R. 1079. Dr. Iskandar prescribed Wellbutrin and psychotherapy. R. 1080. In April 2018, Brandon reported doing better with Wellbutrin, but he still presented with a depressed mood. R. 1087. Dr. Iskandar increased Brandon's dosage of Wellbutrin.

Brandon followed up with Dr. Iskandar monthly from April through July 2018. He reported doing better with Wellbutrin, although he continued to present with a depressed mood. R. 1096–1115. From September through December 2018, Brandon reported that his depressed mood was better, but he experienced irritability episodes. Dr. Iskandar adjusted his medication and continued to recommend psychotherapy. R. 1326–1339.

The record contains multiple opinions regarding Brandon's RFC from treating, consulting, and reviewing physicians.  On February 15, 2013, state agency physician R. Warren, M.D., reviewed Brandon's record and determined that Brandon had moderate limitations in areas of understanding and memory, sustained concentration and persistence, social interaction and the ability to respond appropriately to changes in the work setting. R. 494–95.  Dr. Warren determined that Brandon can understand and remember simple instructions, attend and concentrate for periods of two hours as is required in the workplace, interact appropriately with peers and supervisors, and adapt to routine workplace changes. R. 496.

On June 30, 2016, consultative physician William Humphries, M.D., examined Brandon and completed a consultative report. R. 616–18. Dr. Humphries noted upon examination that Brandon's neck and back were tender to palpation, he had no tenderness or deformity in his joints, full grip strength, adequate fine manipulation, normal gait, and normal strength in his lower extremities. R. 617.  Dr. Humphries diagnosed diastolic hypertension, mild obesity, psoriasis by history with associated arthralgias, possible epidermolysis bullosa and chronic lumbar strain. R. 618.  Dr. Humphries determined that Brandon could sit for 6 hours in an 8-hour workday, stand, and walk 2 hours in an 8-hour workday and lift 20 pounds occasionally and 10 pounds frequently. Dr. Humphries found that Brandon is limited to occasional climbing and kneeling; no crawling; and no frequent hand or foot controls.  Dr. Humphries found no restrictions necessary regarding stooping, crouching, heights, hazards, or fumes. R. 618.

On July 1, 2016, state agency psychologist Alan Entin, Ph.D., reviewed Brandon's records and found that he had no difficulties with activities of daily living or maintaining social functioning, and mild difficulties with maintaining concentration, persistence, or pace. R. 105.

7

On July 5, 2016, state agency physician Robert McGuffin, M.D., reviewed Brandon's records and determined that he was capable of lifting and carrying 20 pounds occasionally, and 10 pounds frequently; sitting, standing and walking 6 hours in an 8-hour workday; and should avoid concentrated exposure to extreme heat, extreme cold, wetness and fumes. R. 107–08.

On December 20, 2016, state agency psychiatrist Leslie E. Montgomery, Ph. D., reviewed Brandon's mental health records and determined that he had moderate limitations with activities of daily living, maintaining social functioning and maintaining concentration, persistence, or pace. R. 793. Dr. Montgomery found that Brandon was not significantly limited in his ability to sustain an ordinary routine without special supervision. R. 797. Dr. Montgomery also concluded that Brandon was moderately limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, complete a normal workday and workweek without interruptions and perform at a consistent pace. R. 797–98. Dr. Montgomery determined that Brandon "retains the ability to perform simple unskilled tasks and interact appropriately with others and adapt to workplace changes." R. 799.

On December 20, 2016, state agency physician Nicholas Tulou, M.D, reviewed Brandon's records and determined that he was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing at least 2 hours in an 8 hour workday; sitting about 6 hours in an 8 hour workday; and occasionally performing postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling. R. 802–803.

On April 4, 2018, occupational therapist Elizabeth McCoy, M.D., completed an RFC Questionnaire and found that Brandon suffers from back pain and skin issues that affect his range of motion, joints affected, sensory changes, redness, muscle weakness and abnormal gait.

8

R. 1047. Dr. McCoy found that Brandon was capable of lifting 20 pounds occasionally, sitting for 20 minutes at one time and no more than 2 hours, standing for 20 minutes at a time for no more than 2 hours, would need to rotate between sitting, standing and lying down every 20 minutes during a workday; and his skin breakdown would not allow consistent work activities. R. 1049–50.

On August 24, 2018, Robbin Oliver, N.P., completed a RFC Questionnaire and found that Brandon can sit for 20 minutes at a time, no more than 2 hours a day; stand for 15 minutes at a time, no more than 2 hours a day; and must lie down once every 2 hours during the workday. R. 1195. Ms. Oliver found that Brandon can occasionally lift 10 pounds and would be absent from work more than 3 times a month due to his impairments. R. 1196. Ms. Oliver determined that Brandon has an extreme limitation with the ability to deal with the normal stresses of competitive employment, such as working at a consistent pace, working appropriately with coworkers, and not taking an excessive number of breaks. R. 1194. She also noted that his medication causes dizziness, headaches, decreased immune response, sedation, altered response time, forgetfulness, blurred vision, confusion, and weakness.

On January 16, 2019, Brandon's treating rheumatologist, Adebenge Bankole, M.D., completed a form noting that Brandon's symptoms lead to a diagnosis of psoriatic arthritis, but that it does not affect his joints. R. 1414–415.

The ALJ reviewed the medical evidence and opinions and determined that Brandon has a moderate limitation with concentrating, persisting, or maintaining pace. R. 20. The ALJ explained, "[t]he claimant has consistently shown a good ability to maintain good eye contact, dress appropriately, have an appropriate fund of knowledge, and good cognition. He could

9

complete serial seven calculations, had linear thought processes, and intact thought associations." Id.

The ALJ reviewed Brandon's mental health records and noted that he complained of depression and anxiety. R. 24. The ALJ noted that in August 2016, Brandon presented with a labile mood, but was calm and cooperative, with intact memory, normal cognition, intact insight, and unremarkable thoughts. R. 24. He was treated with medication. Brandon complained of depressive symptoms in October 2016 and April 2018. In April, Brandon presented with a depressed mood, but had full range of affect, intact memory, fair insight and judgment and appropriate fund of knowledge. R. 26.

The ALJ reviewed the medical opinion evidence, and after reciting the four state agency opinions (Drs. Entin, McGuffin, Montgomery and Tolou), the ALJ gave their findings "partial weight, when considered as a whole." R. 28. The ALJ explained,

> While they do show an evolution in the limitation and consideration of the claimant's impairments form non-severe to severe, the findings are not entirely consistent with the exams. The claimant shows good control of his psoriasis, depression, and anxiety, with medication but the claimant's obesity was not considered, nor were the later opinions and treatment. Therefore, partial weight is appropriate.

R. 28.

The ALJ noted Nurse Practitioner Oliver's opinion that Brandon has extreme limitations in concentration, persistence or pace due to depression and anxiety. R. 28. The ALJ gave Ms. Oliver's opinions as to Brandon's limitations little weight, noting "[t]he findings around this date are not supported by the medical evidence. The Claimant was consistently reporting that his pain was under control with medication, he had little psoriasis, and his mental status exams were showing a normal mood and affect." R. 28.

10

The ALJ gave the testimony of Brandon's spouse, Tiffany Walton, little weight, noting that she is not medically trained, and it is not consistent with the preponderance of the opinions and observations by medical doctors in this case. R. 29.

The ALJ further stated that Brandon's "own reporting and testimony, illustrated that he was capable of handling personal care, making meals, lifting and carrying, socialization, maintaining attention and concentration, and exertional activities consistent with the residual functional capacity assessment." R. 29. The ALJ does not cite to specific reports or testimony from Brandon to support this statement. It is unclear what treatment notes or testimony establish that Brandon can maintain attention and concentration. During the administrative hearing, Brandon testified that he does not perform any activities around the house such as washing dishes, cooking meals, vacuum cleaning, hauling wood (R. 66–67), and he does not drive a vehicle more than 5 miles from his house (R. 78).

In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id.

Likewise, in Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).

In Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), the court held that the ALJ provided too little explanation for the court to meaningfully review whether the RFC properly accounted for the claimant's moderate limitations in concentration, persistence and pace. The court found that the ALJ needed "to establish for how long, and under what conditions, Thomas is able "to focus [her] attention on work activities and stay on tasks at a sustained rate. Only then will we or any court be able to meaningfully review the ALJ's RFC finding." Id. at 4, n. 5. The court in Thomas also found error because the ALJ did not draw "explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday- a benchmark established by the Administration's own regulations." Id. at 3.

Here, multiple reviewing and examining physicians determined that Brandon was moderately impaired in his ability to maintain concentration, persistence, or pace, and complete a

12

normal workday and workweek. No physician specifically concluded that Brandon could sustain work for an 8-hour day despite his moderate impairment in concentration, persistence, or pace. Specifically, Dr. Warren determined that Brandon could attend and concentrate for periods of two hours as required in the workplace (R. 496); Dr. Entin found that Brandon had only mild difficulties with maintaining concentration, persistence or pace (R. 105) [4]; and Dr. Montgomery found that Brandon was moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions and perform at a consistent pace (R. 797). The ALJ gave the state agency physician opinions "partial weight, when considered as a whole;" thus, it is impossible for the court to discern which portions of each physician opinion the ALJ relied upon.

The ALJ gave little weight to Ms. Oliver's opinion that Brandon has an extreme limitation with the ability to deal with the normal stresses of competitive employment, such as working at a consistent pace, working appropriately with coworkers and not taking an excessive number of breaks.  In explanation, the ALJ stated that "[Brandon's] mental status exams were showing a normal mood and affect." R. 28.  This explanation does not address Ms. Oliver's concerns regarding Brandon's ability to persist at and sustain work for an 8-hour workday.

The ALJ did not separately explain or discuss Brandon's ability to concentrate, persist or sustain work for an 8-hour workday in his decision.  The ALJ failed to draw an "explicit conclusion about how [Plaintiff's] mental limitations affect [her] ability to perform job-related tasks for a full workday—a benchmark established by the Administration's own regulations." Thomas, 916 F.3d at 312. In fact, at no point in his decision does the ALJ discuss Brandon's

---

[4] Dr. Entin found that Brandon had at most mild mental impairments; however, the ALJ determined that Brandon had a moderate impairment with maintaining concentration, persistence, or pace; thus, he must address these impairments in the RFC.

13

"ability to sustain work at a competitive pace over a typical workday." See Beau S. v. Comm'r, Soc. Sec. Admin., No. SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019) (reversing and remanding an ALJ's decision where it fails to address this same capability). Although Shinaberry stated there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC," 952 F.3d at 121, the Shinaberry opinion does not absolve the ALJ from including "explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." Thomas, 916 F.3d at 312

This case is distinguishable from Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), where the Fourth Circuit found that substantial evidence supported the ALJ's determination that the claimant, who had moderate difficulties in social functioning and in concentration, persistence, or pace, would be able to stay on task while working in low stress non-production jobs with no public contact. Id. at 79. In Sizemore, the ALJ relied on findings from state agency psychologists that the claimant could maintain attention for at least two hours at a time and could perform basic, routine tasks on a sustained basis. Id. at 80–81. The court concluded that the opinions of these state agency doctors, "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact.'" Id. (emphasis in original) citing Mascio, 780 F.3d at 638.

Here, none of the physician opinions given weight by the ALJ address Brandon's ability to perform tasks *on a sustained basis* for an 8-hour workday. The Commissioner asserts that the

14

"key" finding supporting the ALJ's decision is Dr. Montgomery's conclusion that Brandon is not significantly limited in his ability to sustain an ordinary routine without special supervision (R. 797). Comm'r Br. Summ. J. p. 35.  However, Dr. Montgomery also found that Brandon was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 798. The ALJ did not discuss the discrepancy between Dr. Montgomery's conclusions that Brandon can sustain an ordinary routine but is impaired in his ability to complete a normal workday and workweek and perform at a consistent pace. Indeed, the ALJ did not provide any analysis regarding Dr. Montgomery's opinion, aside from considering it in a group with the other state agency physician opinions and giving all partial weight.  Thus, contrary to the Commissioner's argument, Dr. Montgomery's opinion does not provide the necessary support for the ALJ's conclusion that Brandon can sustain work for a full workday.

Further, the ALJ's summary of the medical evidence, without more, does not sufficiently explain whether or why he found it unnecessary to include any additional limitations for concentration, persistence, or pace in the RFC. See Shawn S. v. Saul, No. DLJ-19-1188, 2020 WL 4042850, at *2–3 (D. Md. July 17, 2020) (remanding under Mascio and distinguishing Shinaberry where the ALJ "summarized" and "cited to" many of the relevant medical records, but failed to "discuss them in the context of Plaintiff's ability to concentrate, persist, or maintain pace").

Without further explanation, the court cannot determine how the ALJ arrived at his conclusion that Brandon can concentrate, persist, and sustain work for an 8-hour day.  Remand is required to allow the ALJ to establish for how long and under what conditions Brandon can

focus his attention on work activities and stay on task at a sustained rate.[5] Kirk T. v. Saul, No.CBD-19-1274, 2020 WL 2992529, at *9 (D. Md. June 4, 2020).

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Brandon's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: May 24, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[5] Brandon's additional allegations of error are not decided because I find that remand is warranted based on the ALJ's failure to explain his conclusion that Brandon can sustain work for an 8-hour day. See Boone v. Barnhart, 353 F.3d 203, 211 n. 19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

16